**PHUC QUANG LE, Plaintiff–Appellee,**

v.

**S. Hubert HUMPHREY, Jr., et al., Defendants,**

**Merritt Watson, LLP, Garnishee–Appellant.**

**No. 16–12209**

United States Court of Appeals, Eleventh Circuit.

(August 4, 2017)

---

Lindsey Walker Hillis, The Hillis Firm, LLC, Atlanta, GA, for Plaintiff–Appellee.

Eckhart Blackert, Scott Robert Hoopes, Timothy Sheffield Walls, Mills & Hoopes, LLC, Lawrenceville, GA, for Defendants.

Richard L. Robbins, James M. Brigman, Rachel Frazier Gage, Alexa Roberta Ross, Robbins Ross Alloy Belinfante & Littlefield, LLC, Joseph Hall Wieseman, Hawkins Parnell Thackston & Young, LLP, Atlanta, GA, for Garnishee–Appellant.

Before WILLIAM PRYOR, JORDAN, and BALDOCK,* Circuit Judges.

PER CURIAM:

Following multiple unsuccessful efforts in federal and state court to enforce a monetary sanctions order, and over two years after that order was entered, Phuc Quang Le convinced the district court to amend its order under Federal Rule of Civil Procedure 60(a). The amended order imposed joint and several liability on a law firm that was not named in the original order. After a review of the record, and with the benefit of oral argument, we conclude that this amendment constituted reversible error because it was not authorized by Rule 60(a).

## I

On February 12, 2010, Mr. Le filed a verified petition to confirm an arbitration award against former business associates Hubert Humphrey, Jr. and World Marketing Alliance, Inc. (the "World Marketing defendants") for wrongful termination of a business arrangement. The district court confirmed the award in November of 2010 and issued a judgment to that effect.

---

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Mr. Le then obtained writs of execution and moved to enforce the judgment. In support of these efforts, Mr. Le's counsel engaged in post-judgment discovery and related litigation. Attorney William McLean, who was with the Merritt Watson law firm, represented the World Marketing defendants against these collection efforts.

Mr. Le's post-judgment litigation against the World Marketing defendants marched on for years with little success. Eventually, after various alleged discovery violations by the World Marketing defendants, the district court issued an order to show cause why they should not be sanctioned. But on the eve of the deadline to show cause, WMA filed for bankruptcy.

The case was quickly kicked back from the bankruptcy court to the district court. The bankruptcy court concluded that the case should be dismissed and found, among other things, that WMA filed the bankruptcy petition "to avoid compliance" with the district court's show cause order. *See* Tr. of Bankruptcy Court Hearing, January 25, 2012, D.E. 80–10 at 72.

## A

After the case returned to the district court, Mr. Le again sought post-judgment discovery, to no avail. So, on March 26, 2012, Mr. Le filed a motion for sanctions under Federal Rules of Civil Procedure 11, 37, and 45, as well as 28 U.S.C. § 1927, and the inherent judicial power of the court. In that motion, Mr. Le sought contempt against "Respondents World Marketing Alliance, Inc. ... and S. Hubert Humphrey, Jr. ... and their counsel." D.E. 80 at 1. The motion demanded, among other things, an award of monetary sanctions against "the Respondents and their counsel, jointly and severally." *Id.* at 20. Mr. Le detailed the history of post-judgment litigation between the parties,

including what he argued was a clear pattern of dilatory tactics and violations of discovery obligations by Mr. McLean and his clients, the World Marketing defendants. The motion did not mention Merritt Watson, and did not indicate that the term "their counsel" included Merritt Watson. Nor did the motion seek to impose vicarious liability on Merritt Watson for the conduct of Mr. McLean.

The district court agreed with Mr. Le. It concluded that WMA, Mr. McLean, and James Tenney (an attorney who was listed as WMA's registered agent) "did not timely respond to repeated discovery requests" and that the bankruptcy filing was indeed an attempt to avoid complying with discovery obligations. *See* Sanctions Order, August 10, 2012, D.E. 120 at 7, 16–25. As a consequence, the district court "found contempt on the part of respondents and their counsel" and ordered them to appear at a hearing where the court would determine "the precise amount of the sanctions to be imposed." *Id.* at 30, 35. The court used the phrase "their counsel" when referring to Mr. McLean, and did not state that Merritt Watson was subject to sanctions for contempt. *See, e.g., id.* at 31–32.

On September 27, 2012, the district court convened the hearing and took evidence to determine the scope of its sanctions award. At the end of the hearing, Mr. Le's counsel gave closing remarks and asserted the award should extend to the Merritt Watson law firm. *See* Tr. of Sanctions Hearing, September 27, 2012, D.E. 151 at 164 ("We have also indicated on what should be joint and several against Mr. McLean, World Marketing Alliance, and Merritt and Tenney, indicated [sic] the same numbers and with the same proviso as to Mr. Robinson's information and our attorney's fees."). Defense counsel had previously pushed back against that contention, arguing that the firm was not a

party to the sanctions award and that counsel for Mr. Le was reading the court's award too broadly by seeking to sweep the firm within its reach. *See id.* at 18–19.

The district court rejected Mr. Le's broad reading of its sanctions award. During a lengthy back and forth with Mr. Le's counsel, the district court made a number of statements which indicated that Merritt Watson was not subject to sanctions for contempt:

- "They [the Merritt Watson law firm] are not a party or respondent to this, I don't believe. The order of sanction was as to Mr. McLean, not to a law firm."
- "The law firm is not a party to this responder [sic], Mr. McLean is."
- "You haven't filed a motion directing that the law firm be held in contempt, I don't believe."
- "The law firm is not a respondent to this thing and you consider directing it as to them and I want to be precise about it."
- "The law firm may include people who have had absolutely nothing to do with this case."
- "I am not raising any question about Mr. McLean. He is here. I am talking about a law firm by the name of Merritt Watson. They are not shown to have ever themselves been counsel in this case. Mr. Mclean was—they are merely shown as part of his address."
- "The docket I am looking at nowhere lists the law firm itself. And, of course, the law firm itself can't represent him except through an individual. Move on. I will deal with it. No need to argue with you."

*Id.* at 171–74.

After the hearing the court entered its sanctions order. The court imposed sanctions against "respondents and their counsel, jointly and severally, in the total amount of $319,357.20." Sanctions Order, December 27, 2012, D.E. 149 at 11. The court again used the phrase "their counsel" when referencing Mr. McLean. *See id.* at 3 ("Both respondents and their counsel, William H. McLean ('McLean'), object to the amount of requested fees because they are unreasonable."). The sanctions order did not mention Merritt Watson—except incidentally when quoting a filing for a different point—much less award sanctions against the firm.

The district court did not return to the issue of Merritt Watson's potential liability for sanctions, and Mr. Le never asked the court to clarify whether or not Merritt Watson was liable. So the argument that Merritt Watson should be held liable for the sanctions was put to bed for years as Mr. Le sought to enforce the award against Mr. McLean.

**B**

On March 8, 2013, Mr. Le obtained a judgment "against respondents S. Hubert Humphrey, Jr. and World Marketing Alliance, Inc. and their counsel, jointly and severally, in the amount of $319,357.20." Clerk's Judgment, March 8, 2013, D.E. 162 at 1. A month later, he sought and received a writ of execution "in the amount of $319,357.20 plus post judgment interest at the rate of 0.17 percent per annum from 3/8/2013 computed daily for World Marketing Alliance, Inc. and Counsel William H. McLean, IV." *See* Paperless Docket Entry for April 3, 2013.

Mr. Le then attempted to enforce the judgment by moving to garnish Mr. McLean's wages from Merritt Watson. *See* Motion for Writ of Garnishment, April 11, 2013, D.E. 166. Merritt Watson moved to quash the writ of garnishment.

On September 12, 2013, the district court held a hearing on the motion for garnishment and ordered briefing on the issue of indemnification for the sanctions award. Some five months later, the court issued an order concluding that Merritt Watson's "potential liability to McLean for indemnification is not subject to garnishment." Garnishment Order, February 26, 2014, D.E. 215 at 15. At no time during the garnishment proceeding did Mr. Le contend that garnishment was appropriate because Merritt Watson was primarily or vicariously liable for the sanctions award.

Mr. Le then unsuccessfully sought relief in state court. He filed actions seeking to hold Merritt Watson liable for the sanctions award based on theories of vicarious liability, negligent supervision, and breach of various duties. Merritt Watson moved to dismiss the suits, arguing that Mr. Le's claims were an issue for the federal district court that imposed the sanctions and that the doctrines of res judicata or collateral estoppel barred the claims. The state court agreed with Merritt Watson and denied relief to Mr. Le.

Two-and-a-half years after entry of the initial sanctions order, Mr. Le returned to federal court. He filed a "Motion to Correct or Clarify Sanctions Award Based on Oversight and Omission pursuant [to] Fed. R. Civ. Pro. 60(A)." The motion, which is the genesis of this appeal, requested an order clarifying that the district court's "original meaning of 'their counsel' in the Sanctions Award must have included both Mr. McLean and the [Merritt Watson] Law Firm." D.E. 244 at 11.

In his motion, Mr. Le attempted to excuse his delay of two-plus years to seek enforcement of the sanctions award against Merritt Watson:

Le notified the Law Firm of his belief that the term "[r]espondents and their counsel" in the Sanctions Award included both Mr. McLean and the Law Firm and of his intention to seek a writ of execution against both. The Law Firm's counsel responded, stating it disagreed and any attempt to collect against the Law Firm would be actionable against both Mr. Le and his counsel. Based on those threats, Mr. Le has not sought a writ of execution against the Law Firm but rather only Mr. McLean.

Id. at 3–4. See also id. at 4 ("In an effort to avoid further burden on this [District] Court, Mr. Le filed a complaint in the State Court of Cobb County alleging the Law Firm was liable for the Sanctions Award ... with the expectation this matter would be promptly resolved.") (footnote omitted).

The district court granted Mr. Le's Rule 60(a) motion, relying on two primary rationales. First, the court concluded that there was a factual ambiguity over whether "counsel" in the initial sanctions order included Merritt Watson given that none of the sanctions orders or judgments "expressly define 'counsel' as McLean," and because "[c]ontrary to respondents' contention," "the court did not state that the Sanctions Award was not against the Law Firm." D.E. 248 at 7, 9. Second, the court explained that its exchange with Mr. Le's counsel at the September 2012 sanctions hearing did not resolve whether "counsel" included Merritt Watson. The court cited a short excerpt of the lengthy exchange during the hearing and concluded that its statements about the law firm concerned "the contempt part of the sanctions, not the amount of the sanctions." Id. at 7–11. The court also emphasized that, earlier in that same hearing, and during a prior hearing, Mr. Le's counsel had asserted that the sanctions award was being sought "against Mr. McLean, his law firm, and the respondents," and that those arguments were not corrected by the court. Id. at 11.

In sum, the district court concluded that an "ambiguity exist[ed] as to the term 'counsel,'" and that it had "the authority to clarify the ambiguity pursuant to Rule 60(a)." *Id.* It clarified the ambiguity by making Merritt Watson jointly and severally liable with the World Marketing defendants and Mr. McLean for over $300,000 in sanctions. Merritt Watson now appeals.

## II

"We review a district court's decision to enter a corrected judgment under Rule 60(a) for an abuse of discretion. But the determination of whether it is Rule 60(a) that authorizes the correction—as opposed to Rule 59(e) or Rule 60(b)—is a question of law that we review de novo." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193 (5th Cir. 2011) (footnotes and citations omitted). So the question before us—whether Rule 60(a) authorized the district court's amendment of the sanctions order to include Merritt Watson—receives plenary review.

Rule 60(a) allows a district court to "correct a clerical mistake or a mistake arising from oversight or omission." A "district court may act under Rule 60(a) only to correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time." *Vaughter v. E. Air Lines, Inc.*, 817 F.2d 685, 688–91 (11th Cir. 1987) (quotation and internal quotation marks). We have repeatedly cautioned that a "district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Weeks v. Jones*, 100 F.3d 124, 128–29 (11th Cir. 1996) (quotation omitted). Indeed, "errors that affect substantial rights of the parties are outside the scope of Rule 60(a)," and "may be corrected under Rule 60(b) if brought to the attention of the district court within

the one year time limit." *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976) (footnote omitted).

The district court's correction here was not the sort contemplated by Rule 60(a). The court's material change to its sanctions order, which made liable a party excluded from the award entered some two-and-a-half years earlier, is the type of correction that must be sought under Rule 60(b) within a year from the date the order is entered. *See id.* (holding that Rule 60(a) did not authorize the district court to change the rate of interest in its initial order).

We come to that conclusion for a number of reasons. First, the district court's statements at the September 2012 hearing indicate that, at that time, the district court was not contemplating sanctions against Merritt Watson. Second, there were no findings by the court as to why Merritt Watson should or could be held in contempt. Third, Mr. Le never followed up on his request to hold Merritt Watson liable, and failed to ask the court for contemporaneous clarification of the term "their counsel." Fourth, Mr. Le's subsequent attempt to get a state court to rule that Merritt Watson was liable for the sanctions award (based in part on theories of vicarious liability and negligent supervision) shows that Mr. Le himself did not believe that the district court's sanctions order made Merritt Watson jointly and severally liable with Mr. McLean. Fifth, at oral argument Mr. Le's counsel conceded that it is not clear that sanctions were initially sought against Merritt Watson.

In an appropriate case, of course, a law firm can be sanctioned. *See, e.g., In re Mroz*, 65 F.3d 1567, 1575–76 (11th Cir. 1995) (inherent powers); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (29 U.S.C. § 1927). And Rule 11 requires a district court to bind a law firm "[a]bsent

exceptional circumstances." Fed R. Civ. P. 11(c)(1). But here the district court never returned to the issue of Merritt Watson's liability following the September 2012 hearing, and Mr. Le did not ask the court for clarification. Under the circumstances, Merritt Watson reasonably believed that it was off the hook.

We also add a practical observation. A Rule 60(a) order does not restart the time for an appeal. *See, e.g., BBCA, Inc. v. United States*, 954 F.2d 1429, 1431 (8th Cir. 1992); *Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404 (2d Cir. 1963). So if the district court's amendment was proper under Rule 60(a), Merritt Watson would not now be able to challenge the district court's imposition of joint and several liability with Mr. McLean for the sanctions award. And that, given the record before us, would present significant due process concerns.

### III

"[T]he whole purpose of Rule 60(b) is to make an exception to finality." *Buck v. Davis*, —— U.S. ——, 137 S.Ct. 759, 779, 197 L.Ed.2d 1 (2017) (citation and internal quotation marks omitted). Where, as here, a party attempts to circumvent finality by using Rule 60(a) to materially and substantively amend a sanctions award years after it was entered, courts must be careful to characterize the attack on finality for what it is—an untimely Rule 60(b) motion. We accordingly reverse the district court's grant of Mr. Le's Rule 60(a) motion and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**